PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2257
No. 09-2258
_____

IN RE: MUSHROOM DIRECT PURCHASER
ANTITRUST LITIGATION

EASTERN MUSHROOM MARKETING COOPERATIVE
INC; KAOLIN MUSHROOM FARMS INC; TO-JO FRESH
MUSHROOMS INC; CARDILE MUSHROOMS INC;
CARDILE BROS. MUSHROOMS PACKAGING;
MONTEREY MUSHROOMS INC; PHILLIPS
MUSHROOMS FARMS, L.P.; MODERN MUSHROOM
FARMS INC; SHER-ROCKEE MUSHROOM FARM; C&C
CARRIAGE MUSHROOM CO; JOHN PIA;
BROWNSTONE MUSHROOM FARMS INC; COUNTRY
FRESH MUSHROOM CO; ROBERT a. FERANTO, JR., t/a/
Bella Mushroom Farms; FOREST MUSHROOM INC;
GASPARI BROS. INC; GINO GASPARI & SONS, INC;
GIORGIO MUSHROOM COMPANY; GIORGIO FOODS
INC; HARVEST FRESH FARMS INC; LEONE PIZZINI
AND SON, INC; LOUIS M. MARSON, JR., INC; LRP
MUSHROOMS INC;  LRP-M MUSHROOMS LLC;
OAKSHIRE MUSHROOM FARM, INC; MICHAEL PIA;
SOUTH MILL MUSHROOM SALES, INC; UNITED
MUSHROOM FARMS COOPERATIVE, INC;
                                                    Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cv-00620)
District Judge:  Honorable Thomas N. O'Neill, Junior

_____

Argued April 28, 2011
Before: BARRY, HARDIMAN and
TASHIMA,[*] *Circuit Judges.*

(Filed: August 23, 2011)

Barry L. Refsin [Argued]
Hangley, Aronchick, Segal & Pudlin
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103-0000

David M. Buckner
Adam M. Moskowitz
Thomas A. Tucker Ronzetti
Kozyak Tropin & Throckmorton
2525 Ponce De Leon Boulevard
9th Floor
Miami, FL 33134

_____

[*] Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

John G. Odom
Stuart E. Des Roches
Andrew W. Kelly
John A. Meade
Odom & Des Roches
650 Poydras Street
Suite 2020, Poydras Center
New Orleans, LA 70130-0000

Manuel J. Dominguez
Berman DeValerio
4280 Professional Center Drive
Suite 350
Palm Beach Gardens, FL 33410

W. Ross Foote
David P. Smith
Percy Smith & Foote
P.O. Box 1632
Alexandria, LA 71309

Bruce E. Gerstein
Kevin S. Landau
Noah Silverman
Garwin Gerstein & Fisher
1501 Broadway
Suite 1416
New York, NY 10036-0000
 *Attorneys for Direct Purchaser Class Plaintiffs*,
 Plaintiff-Appellee

David P. Germaine
Vanek, Vickers & Masini

111 South Wacker Drive
Suite 4050
Chicago, IL 60606

Ira N. Richards
Trujillo, Rodriguez & Richards
1717 Arch Street
Suite 3838
Philadelphia, PA 19103-0000
    *Attorneys for Publix Super Markets, Inc.*, Plaintiff-
    Appellee

Moira E. Cain-Mannix
Scott D. Livingston
Bernard D. Marcus
Marcus & Shapira
301 Grant Street
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219-0000
    *Attorneys for Giant Eagle, Inc.*, Plaintiff-Appellee

William A. DeStefano [Argued]
Terri A. Pawelski
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555

Martin I. Twersky [Argued]
H. Laddie Montague, Jr.
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103

*Attorneys for Mushroom Cooperative Defendants*,
Defendant-Appellant

Jacqueline P. Rubin
Moses Silverman
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
 *Attorneys for Giorgi Mushroom Co.,* and *Giorgio
 Foods, Inc.*, Defendant-Appellant

Mark A. Wachlin
Dilworth Paxson
1500 Market Street
Suite 3500E
Philadelphia, PA 19102

Terri A. Pawelski
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555
 *Attorneys for Franklin Farms, Inc.*, Defendant

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555
 *Attorneys for Creekside Mushrooms*, Defendant

5

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555

D. Richard Funk
Conner & Winters
One Williams Center
Suite 4000
Tulsa, OK 74172-0000
        *Attorneys for JM Farms, Inc.*, Defendant

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555

Neill C. Kling
Francis P. Newell
Harkins Cunningham
2005 Market Street
2800 One Commerce Square
Philadelphia, PA 19103-0000

Martin I. Twersky [Argued]
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103
        *Attorneys for Kitchen Pride Mushrooms*, Defendant

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555

Joel I. Fishbein
Rosen, Moss, Snyder & Bleefeld
8380 Old York Road
Suite 410
Elkins Park, PA 19027-0000

Jeffrey A. Krawitz
Silverman, Bernheim & Vogel
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102-0000

Martin I. Twersky [Argued]
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103
      *Attorneys for Mario Cutone Mushroom Co.*, Defendant

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555
      *Attorneys for Masha & Toto, Inc., TA M&T*
      *Mushrooms*, Defendants

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555

Amy R. Richter
621 Southwest Morrison Street
Portland, OR 97205

Martin I. Twersky [Argued]
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103
     *Attorneys for Mushroom Alliance, Inc.*, Defendant

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555
     *Attorneys for W&P Mushrooms, Inc.*, Defendant

Donna M. Albani
11 Hampton Lane
Glen Mills, PA 19432

William A. DeStefano [Argued]
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA 19102-2555

Thomas K. Schindler
Reger Rizzo & Darnall
158 West Gay Street
Suite 210
West Chester, PA 19380

Martin I. Twersky [Argued]
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103
    *Attorneys for M.D. Basciani & Sons, Inc.*, Defendant-
    Appellant

Donald M. Barnes
Salvatore A. Romano
Porter, Wright, Morris & Arthur
1919 Pennsylvania Avenue, N.W.
Suite 500
Washington, DC 20006-0000
    *Attorneys for Eastern Mushroom Marketing Coop*,
    Defendant-Appellant

James A. Backstrom, Jr.
Suite 200
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Philadelphia, PA 19102-0000

Christopher E. Ondeck
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2505

*Attorneys for Amicus Curiae National Council of Farmer Cooperatives*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

The Capper-Volstead Act of 1922 allows certain agricultural producers to form cooperatives without incurring antitrust liability. This appeal presents the novel question of whether a prejudgment order denying an agricultural cooperative the protections of the Capper-Volstead Act is immediately appealable under the collateral order doctrine. We hold it is not.

I

In late 2000, a group of mushroom farmers and related entities, most of whom are located in southeastern Pennsylvania, formed the Eastern Mushroom Marketing Cooperative (EMMC). The members of EMMC established minimum pricing policies and programs to improve their position in the market for raw, fresh mushrooms. Pursuant to one such program, EMMC purchased properties (typically from bankrupt mushroom farmers) and resold them with deed restrictions that prohibited mushroom farming. In 2003, the Antitrust Division of the United States Department of Justice (DOJ) initiated an investigation of EMMC. *United States v. E. Mushroom Mktg. Coop., Inc.*, Civil Action No. 04-5829, 2005 WL 3412413 (E.D. Pa. Sept. 9, 2005) (*Mushroom I*). Following its investigation, DOJ filed a Competitive Impact

Statement that concluded, *inter alia*, that EMMC was an agricultural cooperative organized pursuant to the Capper-Volstead Act (the Act), 7 U.S.C. §§ 291-92. In 2005, EMMC and DOJ entered into a consent judgment that required EMMC to nullify the deed restrictions on six parcels it had sold and prohibited it from placing restrictions on parcels sold within ten years.[1] *Mushroom I*, 2005 WL 3412413.

Soon after the consent judgment was filed, various private parties brought their own antitrust suits against EMMC and its members. In June 2006, the District Court consolidated seven class actions and one non-class action previously filed against EMMC and its members. Consequently, a group of mushroom purchasers, including mushroom wholesalers and large supermarkets (Purchasers), filed an amended antitrust class action against EMMC, thirty-seven members, officers and affiliates of members, and unidentified members and/or co-conspirators (Growers), alleging a conspiracy in violation of sections 1 and 2 of the Sherman Act and section 7 of the Clayton Act. *See* 15 U.S.C. §§ 1, 2, 18. Unlike the DOJ action, this consolidated class action alleged antitrust violations involving both EMMC's

---

[1] The final judgment was "without trial or adjudication of any issue of fact or law," *Mushroom I*, 2005 WL 3412413, at *1, and the Competitive Impact Statement specified that "the Final Judgment has no *prima facie* effect in any subsequent lawsuits that may be brought against [EMMC,]" Competitive Impact Statement at 6, *Mushroom I* (No. 04-5829), ECF No. 2 (citing 15 U.S.C. § 16(a)). Neither DOJ determination—that EMMC acted anticompetitively or that EMMC was a properly formed Capper-Volstead cooperative—is binding upon the District Court or this Court.

property purchase program and its minimum pricing policies. Although the specifics of the Purchasers' complaint are not germane to our decision regarding the jurisdictional question, the District Court's summary provides useful background information. The Purchasers alleged that the Growers

> launched a "supply control" campaign by using membership funds [from EMMC] collected during 2001 and 2002 to acquire and subsequently dismantle non-EMMC mushroom growing operations in order to support and maintain artificial price increases. [The Purchasers] allege that the EMMC repeatedly would purchase a mushroom farm or a parcel of farmland and then sell or exchange that farm or parcel at a loss, attaching a permanent or long-term deed restriction to the land prohibiting the conduct of any business related to the growing of mushrooms. . . .

> [The Purchasers] further allege that [the Growers] collectively interfered with non-EMMC growers that sought to sell at prices below those set by the EMMC and pressured independent growers to join the EMMC. The pressure and coercion tactics alleged include threatening and/or implementing a group boycott in which EMMC members would not sell mushrooms to assist independent growers in satisfying their short-term supply needs and/or selling mushrooms to independent growers at inflated prices.

*In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F. Supp. 2d 274, 279 (E.D. Pa. 2009) (*Mushroom II*).

The District Court, after ruling on the Growers' motions to dismiss, bifurcated discovery and entertained cross-motions for partial summary judgment on the preliminary question of whether the Growers were exempt from the antitrust claims under the Capper-Volstead Act. The Court denied the Growers' motion and granted the Purchasers' motion, holding that EMMC was not a proper agricultural cooperative under the Capper-Volstead Act because one member, M. Cutone Mushroom Co., Inc., was not technically a grower of agricultural produce. *Id.* at 286. The District Court further opined that "[e]ven if all EMMC members satisfied the requirements to qualify the cooperative for the Capper-Volstead exemption, the exemption does not extend to protect cooperatives that conspire with non-cooperatives," and it found that the uncontested facts of the case revealed an impermissible price-fixing conspiracy with a non-member mushroom distribution company. *Id.* at 286-91.[2]

---

[2] Because we hold that we do not have jurisdiction to hear this question on interlocutory appeal, we do not opine on the validity of the District Court's holding that EMMC was not properly formed under the Capper-Volstead Act because one of its members was not a grower of agricultural produce. *Mushroom II*, 621 F. Supp. 2d at 286 n.13 ("I have found that the EMMC is not exempt under Capper-Volstead by including M. Cutone [Mushroom Co., Inc.] as a member when it is not a grower . . . ."). We do note that, despite a host of arguments pressed by the Purchasers in the court below and on appeal, the ineligibility of M. Cutone was the only basis for that holding. *Id.* (explaining that, having found

13

In response to the District Court's holding, the Growers filed this appeal. The Purchasers moved to dismiss, claiming that we lack jurisdiction to hear this case as an interlocutory appeal.[3]

## II

"We necessarily exercise *de novo* review over an argument alleging a lack of appellate jurisdiction." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010). We have "jurisdiction of appeals from all *final decisions* of the district courts of the United States." 28 U.S.C. § 1291 (emphasis added). Despite this final order requirement, the collateral order doctrine permits courts of appeals to hear interlocutory appeals from "a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 603 (2009) (quoting *Cohen v.*

---

that one member of EMMC was not a grower, the District Court need not extend its analysis to the Purchasers' other allegations). Nor do we opine on the validity of the alternative holding in the second half of the District Court's opinion, which concerns a different question, whether particular anticompetitive conduct by EMMC would be covered by the Act's exemption if it did apply. *Id.* at 286-91.

[3] The Mushroom Cooperative Defendants (EMMC and 28 companies and individuals) appealed under 28 U.S.C. § 1291, at case number 09-2257. M.D. Basciani & Sons, Inc. appealed separately under § 1291, at case number 09-2258. The appeals were consolidated and we refer to all appellants as Appellants or Growers.

*Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).  We must decide whether an order denying the protections of the Capper-Volstead Act falls within that "small set of prejudgment orders."

In *Cohen*, the Supreme Court established three prerequisites to the application of the collateral order doctrine.  *Cohen*, 337 U.S. at 546.  "[A] district court's order must 1) conclusively determine the disputed question; 2) resolve an important issue completely separate from the merits of the action; and 3) be effectively unreviewable on appeal from a final judgment."  *Forsyth v. Kleindienst*, 599 F.2d 1203, 1207 (3d Cir. 1979) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468-69 (1978); *Cohen*, 337 U.S. at 546).

The first requirement of the *Cohen* test is easily satisfied because the District Court's order conclusively determined the issue of the Growers' protection under the Capper-Volstead Act.  Whether the second requirement is met is less clear because, while a "claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated," *Mitchell v. Forsyth*, 472 U.S. 511, 527-28 (1985), the alternative holding in the latter half of the District Court's opinion includes findings regarding a price-fixing conspiracy that are closely related to the merits of the Purchasers' antitrust claims.  We need not resolve that question, however, because we hold that an order denying a defendant the Capper-Volstead Act's protections is not effectively unreviewable on appeal from final judgment

15

and therefore does not satisfy the third requirement of the *Cohen* test.[4]

A

We begin with the Supreme Court's most recent decision involving the collateral order doctrine. In holding that disclosure orders adverse to the attorney-client privilege are not immediately appealable, the Court wrote:

> The justification for immediate appeal must . . . be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes. This requirement finds expression in two of the three traditional *Cohen* conditions. The second condition insists upon *important* questions separate from the merits. More significantly, the third *Cohen* question, whether a right is adequately vindicable or effectively reviewable, simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement. That a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never

---

[4] The appeal must also present a "'serious and unsettled'" legal question. *Kulwicki v. Dawson*, 969 F.2d 1454, 1459 (3d Cir. 1992) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982)). There is no dispute that the question, whether the arguably inadvertent inclusion of an ineligible member strips an agricultural cooperative of Capper-Volstead protection, is both serious and unsettled.

sufficed. Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order.

In making this determination, we do not engage in an individualized jurisdictional inquiry. Rather, our focus is on the entire category to which a claim belongs. As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustic[e] averted, does not provide a basis for jurisdiction under § 1291.

*Mohawk Indus.*, 130 S. Ct. at 605-06 (alteration and second omission in original) (citations and internal quotation marks omitted).

One category of prejudgment order that long has been recognized as giving rise to an interlocutory appeal is an order denying a defendant immunity from suit; such a denial is "effectively unreviewable on appeal from a final judgment" in that an erroneous denial exposes the defendant to the burden of litigation, thwarting the purpose of the immunity. In *Mitchell v. Forsyth*, the Supreme Court expanded *Cohen* and held that denials of qualified immunity are collateral orders because an "essential attribute [of absolute and qualified immunity is] an entitlement not to stand trial under certain circumstances," and qualified immunity is "an *immunity from suit* rather than a mere defense to liability." 472 U.S. at 525-26, 530. Other immunities from suit have since been recognized, and orders denying those immunities

17

are also immediately appealable under the collateral order doctrine. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (holding that Eleventh Amendment sovereign immunity is an immunity from suit, the denial of which is appealable as a collateral order); *Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 760-61 (3d Cir. 2010) (International Organizations Immunities Act); *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (prosecutorial immunity); *Fed. Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1281 (3d Cir. 1993) (Foreign Sovereign Immunities Act).

B

In support of their argument that we have jurisdiction over this appeal, the Growers cite *Mitchell v. Forsyth* for the proposition that "orders deciding assertions of immunity generally qualify for immediate appeal." Mushroom Coop. Appellants' Br. at 56.

No court of appeals has addressed whether the Capper-Volstead Act provides an immunity from suit, but we considered an analogous question in *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326 (3d Cir. 1999). There, we held that a denial of immunity under the *Noerr-Pennington* doctrine is not an immediately appealable collateral order. The *Noerr-Pennington* doctrine provides an "immunity" from antitrust laws for "[j]oint efforts to influence public officials . . . even though intended to eliminate competition." *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *see E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). As we explained in *We, Inc.*, this immunity is predicated on two principles: the First Amendment right to petition the government, and the

18

language of the Sherman Act indicating that Congress did not intend it to restrict the political process. *We, Inc.*, 174 F.3d at 326. Thus, we concluded that "a right not to be burdened with a trial is simply not an aspect of [*Noerr-Pennington*] protection." *Id.* at 330. Mindful of this analogy—and of the differences between the judicially-created *Noerr-Pennington* doctrine and the Capper-Volstead Act—we turn to the language of the Act and the Supreme Court cases interpreting it.

The Capper-Volstead Act provides an exemption from some of the antitrust prohibitions of the Sherman Act and the Clayton Antitrust Act. The Sherman Act, enacted in 1890, criminalizes certain anticompetitive business practices.[5] The Clayton Act, enacted in 1914, creates a private right of action

---

[5] The Sherman Act provides, in relevant part:

§ 1. Trusts, etc., in restraint of trade illegal; penalty
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. . . .

§ 2. Monopolizing trade a felony; penalty
Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . .

15 U.S.C. §§ 1-2.

for violations of the Sherman Act. 15 U.S.C. §§ 15, 26. "In the early 1900's, when agricultural cooperatives were growing in effectiveness, there was widespread concern because the mere organization of farmers for mutual help was often considered to be a violation of the antitrust laws." *Md. & Va. Milk Producers Ass'n v. United States*, 362 U.S. 458, 464 (1960). This concern led to the passage of section 6 of the Clayton Act[6] and eventually the Capper-Volstead Act in 1922. *Id.* at 464-66. The Capper-Volstead Act provides, in relevant part:

---

[6] Section 6 of the Clayton Act provides:

The labor of a human being is not a commodity or article of commerce. Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws.

15 U.S.C. § 17. The Capper-Volstead Act extended these protections to agricultural cooperatives having capital stock.

20

Persons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, nut or fruit growers may act together in associations, corporate or otherwise, with or without capital stock, in collectively processing, preparing for market, handling, and marketing in interstate and foreign commerce, such products of persons so engaged. Such associations may have marketing agencies in common; and such associations and their members may make the necessary contracts and agreements to effect such purposes: *Provided, however*, That such associations are operated for the mutual benefit of the members thereof, as such producers, and conform to one or both of [certain] requirements . . . .

7 U.S.C. § 291. Thus, the Capper-Volstead Act exempts certain agricultural cooperatives from some of the provisions of the antitrust laws, allowing farmers to act through agricultural cooperatives with "the same unified competitive advantage—and responsibility—available to businessmen acting through corporations as entities." *Md. & Va. Milk Producers*, 362 U.S. at 466; s*ee also Nat'l Broiler Mktg. Ass'n v. United States*, 436 U.S. 816, 822 (1978). Significantly for our purposes, the Act does not explicitly state whether the immunity it provides is one from suit or one from liability.

The Supreme Court's descriptions of the protections afforded by the Capper-Volstead Act inform our decision regarding whether it provides an immunity from suit. According to the Court, the Act does not "wholly . . . exempt

21

agricultural associations from the antitrust laws" because, although it permits the creation of cooperatives, it does "not leave co-operatives free to engage in practices against other persons in order to monopolize trade, or restrain and suppress competition with the cooperative." *Md. & Va. Milk Producers*, 362 U.S. at 463-68; *see United States v. Borden Co.*, 308 U.S. 188, 204-05 (1939) ("The right of these agricultural producers thus to unite in preparing for market and marketing their products, and to make the contracts which are necessary for that collaboration, cannot be deemed to authorize any combination or conspiracy with other persons in restraint of trade that these producers may see fit to devise."); *cf. Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 27-28 (1962) (holding that the individual members of the Sunkist-related cooperatives cannot be held to have conspired with one another in restraint of trade).[7]

The Growers correctly note that the Supreme Court has occasionally referred to the Act as granting "immunity." But that "immunity" is properly understood as an immunity from liability or from prosecution by the government, not an immunity from civil suit. *See Case-Swayne Co. v. Sunkist*

---

[7] We have characterized the function of the Act the same way: "the Capper-Volstead Act permits producers of agricultural products—including milk, mushrooms and others—to *enter into* manufacturing and marketing cooperatives without fear of violating antitrust laws." *Cochran v. Veneman*, 359 F.3d 263, 273 (3d Cir. 2004) (emphasis added) (citation omitted), *vacated on other grounds*, *Lovell v. Cochran*, 544 U.S. 1058 (2005).

*Growers, Inc.*, 389 U.S. 384, 397 (1967) (Harlan, J., concurring in part and dissenting in part) (referring to "immunity *from liability* under . . . the Sherman Act"); *Sunkist Growers v. Winckler*, 370 U.S. at 27-28 ("Section 6 of the Clayton Act provides, inter alia, that agricultural organizations instituted for the purposes of mutual help *shall not be held or construed to be* illegal combinations or conspiracies in restraint of trade under the antitrust laws. The Capper-Volstead Act sets out this immunity in greater specificity . . . ."); *Md. & Va. Milk Producers*, 362 U.S. at 463-64 (referring to "immunity *from prosecution*" and Congress's intent to "immunize . . . *from prosecution*") (all emphases added).[8]

*       *       *

---

[8] The Growers argue that the Act's legislative history indicates Congress's intent to immunize farmers from suit. But the legislative history focuses on government prosecution, not private suits. *See* 62 CONG. REC. 2059 (1922) ("[I]t seems evident that Congress intends that the farmer *shall not be prosecuted* for acting collectively in the marketing of his product."). Although Senator Capper made comments about protecting the American farmer from "persecution by interests opposing him if he seeks to act collectively through cooperative associations," *id.* (remarks of Sen. Capper), there is no indication that such "persecution" includes the threat of private litigation. Furthermore, it would be unreasonable to infer a Congressional intent to relieve farmers entirely of the threat of suit, given the limited nature of the exemption discussed above, which does not shield them completely from the burdens of antitrust litigation.

Neither the language of the Capper-Volstead Act nor Supreme Court cases interpreting it indicate that the Act entitles an agricultural cooperative to avoid entirely the burden of litigation. Because the Act does not provide an immunity from suit, a district court order denying a defendant its protections is not effectively unreviewable after final judgment, and, therefore, is not a collateral order subject to interlocutory review. Accordingly, we will dismiss this appeal for lack of jurisdiction.