GREENAWAY, JR., Circuit Judge,
dissenting.
Since I conclude that Congress has established a clearly defined system for the courts to review decisions of the Board of Immigration Appeals (“BIA”), which requires that petitions for review be filed with the courts of appeals, and not the district courts, I find that I must respectfully dissent from the majority’s opinion. Congress, by enacting the REAL ID Act, vested courts of appeals with jurisdiction to review orders reopening removal proceedings. 8 U.S.C. § 1252(b)(6).[1] This specific statutory authority overrides the application here of the provisions of the Administrative Procedures Act (“APA”), and undermines the majority’s reasoning.
The majority sets forth the factual and procedural history of this matter in thorough detail. I have nothing to add. Similarly, the majority clearly recites the factors we must review in determining whether the APA applies. As they state, review under the APA is available
if (1) the BIA’s action was not “committed to agency discretion by law,” 5 U.S.C. § 701(a)(2); (2) no statute precluded review, 5 U.S.C. § 701(a)(1); (3) the BIA’s action was a “final agency action,” 5 U.S.C. § 704; and (4) no “special statutory review” provision required that Chehazeh’s action be brought in some other form or forum, 5 U.S.C. § 703.
Majority Dec. at 127.
While I think the majority’s reasoning on factors (1)[2] and (3)[3] is open to debate, *142 my principal point of disagreement focuses on factor (4).[4] Congress has developed a statutory scheme that vests responsibility for judicial review of immigration decisions in the courts of appeals, and explicitly directs that review of BIA decisions on motions to reconsider and reopen be consolidated with the review of orders of removal. Given Congress’s efforts to remove district courts from the responsibility of reviewing immigration decisions, why should we extend that authority here? I also believe that Congress’s explicit provision of a method of review for motions to reconsider and reopen undermines the majority’s APA argument.
As the majority notes, Smriko v. Ashcroft allows for application of the APA only “in the absence or inadequacy” of any “special statutory review” provisions. 387 F.3d 279, 290-91 (3d Cir.2004). In the present case, there are two statutes, given short shrift by the majority, that provide for review of immigration decisions, including motions to reopen. First, 8 U.S.C. § 1252(a)(2)(D) provides that
Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.
This provision removes the authority to review legal and constitutional claims from district courts. The APA basis for jurisdiction is only available if no “special statutory review” provision requires that the action be brought in some other forum. Here, Congress has provided a basis for review before our Court, not the district court. The statute does not prohibit judicial review, but it does limit that review to the courts of appeals.
Second, 8 U.S.C. § 1252(b)(6) provides that “[w]hen a petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order.” I do not believe we can circumvent Congress’s clear intention to allow aliens only one opportunity to seek review of a motion to reopen as part of the review of the order of removal before a court of appeals by reading the APA to provide jurisdiction to the district court.
For decades, Congress has expressed its desire to streamline immigration proceedings, endeavoring to “create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens from the United States.” H.R.Rep. No. 72, 109th Cong., 1st Sess., reprinted in 2005 U.S.C.C.A.N. 240 at 297 (2005) (quoting H.R.Rep. No. 1086, 87th Cong. 1st Sess., reprinted in 1963 U.S.C.C.A.N. 2950, 2966 (1961)).[5]
*143 “Congress’s ‘fundamental purpose’ was ‘to abbreviate the process of judicial review of deportation orders’ and to ‘eliminat[e] the previous initial step in obtaining judicial review — a suit in a District Court.’ ” Id. (quoting Foti v. INS, 375 U.S. 217, 224, 84 S.Ct. 306, 11 L.Ed.2d 281(1963)).
“Congress continued these streamlining reforms when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104-208, 110 Stat. 3546 (Sept. 30, 1996).” Id. at 298. The amendments in IIRIRA “were intended to preclude all district court review of any issue raised in a removal proceeding.” Id. The 2005 amendments were directed at correcting anomalies created by the Supreme Court’s decision in I.N.S. v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) with respect to judicial review of the removal proceedings for criminal aliens. One purpose of the amendments was to ensure that “all aliens will get review in the same forum — the courts of appeals.” 2005 U.S.C.C.A.N. at 299. The amendment “would give every alien one day in the court of appeals, satisfying constitutional concerns.” Id. “By placing all review in the courts of appeals, [the amendments] would provide an ‘adequate and effective’ alternative to habeas corpus.” Id. at 300 (quoting St. Cyr, 533 U.S. at 314, 121 S.Ct. 2271).
Further, Congress’s action in consolidating review of motions to reopen with review of the order of removal is consistent with the established practice in appellate review of civil cases involving motions to reconsider, motions to reopen, and decisions vacating default judgment. For example, “[o]rders granting a motion to vacate [default judgment] should be treated in the same way as orders granting a new trial [both of which] set[] the stage for further trial court proceedings [and are] not final. Appeal is properly taken upon conclusion of the proceedings set in motion by the order vacating the judgment.” 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3916 (2d ed.) (footnotes omitted). Indeed, “[a]n order granting a new trial ... ordinarily is not final; review is supposed to be available only after completion of the new trial.” Id. at § 3915.5. “Denial of immediate appeal from an order granting a new trial means that the order merges in, and is reviewable on appeal from, the final judgment entered after the new trial or other event that concludes the litigation.” Id. “Few theories are likely to help a party who is anxious to bend the final judgment rule to permit appeal from an order granting a new trial.” Id.
“Congress is expected to legislate against the backdrop of well-established common law principles.” Duvall v. Att’y Gen., 436 F.3d 382, 387 (3d Cir.2006). That is exactly what Congress did in enacting § 1252(b)(6) — Congress recognized the principle that in granting a motion to reopen, the BIA sets in motion a new proceeding, which should be allowed to continue to its conclusion before review is sought of any stage of that proceeding. By seeking review of the decision reopening his removal proceedings in the District *144 Court, Chehazeh sought to bypass the procedures established by Congress based on common law principles.
Given the clear directive of § 1252(b)(6), I find the majority’s discussion of 8 U.S.C. § 1252(g) to be unnecessary to the analysis of the question before us.[6] Congress has removed any ambiguity regarding when review of a decision on a motion to reopen or reconsider is to be had. That review is before the appropriate court of appeals, in conjunction with the review of the order of removal. The majority expressed great concern that “ § 1252(g) effectively becomes a ‘do-over’ provision.” Majority Dec. at 32. Rather than insulating decisions to reopen and reconsider from review, Congress provided an explicit mechanism for an alien to obtain review of these decisions. I therefore cannot share the majority’s concern that aliens will be prevented from seeking review of a decision to reopen. To be sure, that review will be delayed until a final order of removal is entered, but I perceive no harm to the alien in following that procedure since it reflects Congress’s legislative intent in adopting the REAL ID Act and there is no constitutional violation resulting from such a procedure.
To the contrary, I fear that the majority’s decision will create a situation similar to that in Duvall where our Court expressed concern that Duvall’s refusal to testify as to her citizenship during her removal proceeding “would effectively preclude the INS from ever relitigating the issue of alienage or ever securing removal, despite the alien’s ongoing criminal conduct.” Duvall, 436 F.3d at 391. Here, the government presented evidence to the BIA that Chehazeh may have committed fraud during his original asylum application proceeding. The BIA reopened the matter and remanded to an immigration judge so that the evidence could be presented more fully and the allegations of fraud evaluated by the appropriate factfinder. By allowing Chehazeh to seek review of the decision to reopen before the District Court, absent a full exploration of the facts by an immigration judge, the majority creates a situation where an alien could lie during their asylum proceeding, and then never be put to task regarding that lie before the immigration authorities.
In satisfying the third factor — finality of the agency’s decision — the majority applies the collateral order doctrine. Analogizing to review of a post-judgment order in a criminal proceeding where double jeopardy concerns exist, the majority finds that the BIA’s decision to reopen is effectively unreviewable if left until a later time in the litigation. Majority Dec. at 39-43. I disagree with this conclusion for several reasons. Most importantly, in the statute Congress has explicitly provided for review of the BIA’s decision to reopen. Second, both the Supreme Court and our Court have consistently held that application of the collateral order doctrine should be the exception, not the rule. Third, I am disinclined to imbue immigration proceedings with the constitutional protections associated with double jeopardy review.
Having already discussed the statutory directive set forth in § 1252(b)(6), I turn to the general principles underlying application of the collateral order doctrine. The Supreme Court has emphasized its view that the collateral order doctrine should be *145 invoked rarely.[7] Mohawk Indus., Inc. v. Carpenter, — U.S. -, 130 S.Ct. 599, 175 L.Edüd 458 (2009). That is, “[i]n applying Cohen’s collateral order doctrine, we have stressed that it must ‘never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.’ ” Id. at 605 (quoting Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994)).
Given these strong statements on the narrow scope of the collateral order doctrine, I do not think it is applicable here. The majority analogizes the present situation to that in Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), where the collateral order doctrine was applied to prevent the government from “using its resources and power ... to make repeated attempts to convict an individual,” and to protect the individual from the concomitant “embarrassment, expense and ordeal” associated with multiple prosecutions. Id. at 661-62, 97 S.Ct. 2034. Specifically, the Supreme Court concluded that an order denying a defendant’s motion to dismiss an indictment on double jeopardy grounds was reviewable under the collateral order doctrine. The Court noted that “the very nature of a double jeopardy claim is such that it is collateral to, and separable from the principal issue at the accused’s impending criminal trial.” Id. at 659, 97 S.Ct. 2034.
The situation presented by this case differs from that in Abney in important ways. The issues raised in the motion to reopen are not collateral to or separable from the issues underlying the asylum application. Rather, the new facts introduced by the government directly address, among other points, the question of whether or not Chehazeh committed fraud during the original asylum proceeding.
Additionally, as the Supreme Court has observed, “[a] deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime.... Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing.” I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).
Further, our court has noted that “[wjhile an alien may be eligible for a grant of asylum or an adjustment of status under the immigration laws, he is not entitled to such benefits as a constitutional matter. There is no constitutional right to asylum per se. An alien seeking admission to the United States through asylum ‘requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.’ ” Mudric v. Att’y Gen., 469 F.3d 94, 98 (3d Cir.2006) (quoting Marineas v. Lewis, 92 F.3d 195, 203 (3d Cir.1996)) (internal citations omitted).
With those admonitions in mind, I turn to the third prong of the collateral order test — whether the matter at hand will be effectively unreviewable later. The Supreme Court discussed this factor in Mohawk Indus. There, the Court observed that
*146 “the third Cohen question, whether a right is ‘adequately vindicable’ or ‘effectively reviewable,’ simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement.” That a ruling “may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment ... has never sufficed.” Instead, the decisive consideration is whether delaying review until the entry of final judgment “would imperil a substantial public interest” or “some particular value of a high order.”
Id. at 605 (quoting Swint v. Chambers County Comm’n, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); Digital Equip., 511 U.S. at 872, 878-879, 114 S.Ct. 1992; and Will v. Hallock, 546 U.S. 345, 352-353, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006)).
The majority expresses concern over the government’s ability to continue to challenge Chehazeh’s grant of asylum, forcing him to relitigate an issue that was already decided. Majority Dec. at 39. I do not share that concern. The issue that will be addressed in the reopened proceeding is the question of whether or not Chehazeh committed fraud during his original asylum application. Requiring Chehazeh to defend himself in a second proceeding does not “imperil a substantial public interest.” To the contrary, I believe thoroughly examining the possible fraud in his original asylum application is a substantial public interest that should be protected. Relitigating his asylum application may place an additional burden on Chehazeh, but that burden is not insurmountable, and is presumably an unusual circumstance.
Further, 8 U.S.C. § 1252(b)(6) requires that review of a motion to reopen be consolidated with the review of the removal order. Congress has spoken clearly on this issue and concluded that review should be had in a single appeal. As a result, Chehazeh would be able to obtain review of the motion to reopen in the future.
Motions to reopen are filed often in immigration proceedings, and some of those motions are granted. In most, if not all, of those cases, the litigants seek review in the appropriate court of appeals, as required by the statute. The only aspect of this case that makes it, as the majority notes, “highly unusual” is Chehazeh’s decision to seek review in the District Court, rather than before us.[8] In the REAL ID Act, *147 Congress clearly vested responsibility for review of BIA decisions with the courts of appeals. See, e.g., 8 U.S.C. § 1252(a)(2)(D). By filing his petition seeking review of the BIA’s decision to reopen his case with the District Court, Chehazeh attempted to circumvent the method of review established by Congress. I cannot condone his attempt to do so. I would affirm the District Court’s decision finding that it lacks jurisdiction to hear this matter.[9]

. Section 1252(b)(6) provides that "[w]hen a petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order.”

. While I agree with the majority's ultimate conclusion that the BIA's decision in this case is not discretionary, I would reach that decision by a different, and somewhat shorter, path. The government's motion, filed pursuant to 8 C.F.R. § 1208.24, sought to reopen the proceedings in order to terminate Chehazeh's asylum and withholding of removal. Section 1208.24(f) sets forth specific criteria that the government must establish by a preponderance of the evidence during the reopened proceeding in order to terminate the alien’s asylum or withholding of removal. Arguably, the government, in its motion to reopen, would have to demonstrate a likelihood of success in proving at least one of these factors. As a result, the BIA’s decision to reopen would not be discretionary. Rather, the BIA would be required to evaluate the *142 specific factors set forth in the regulations in reaching its decision on reopening.

. I disagree with the majority’s conclusion that the BIA’s decision to reopen this case constitutes final agency action. I explain my views more fully infra.

. I agree with the majority's conclusion in section III.A.2.a. that no statute precludes judicial review of the BIA’s decision. That discussion, however, focuses only on the impact of the REAL ID Act on the review of habeas corpus petitions vis-a-vis review of orders of removal. I find that analysis inapposite to the question presently before us.

."Before [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996], individuals who were 'ineligible for admission into the United States and were never admitted into the United States were referred to as "excludable,” while aliens who had gained admission, but later became subject to expulsion from the United States, were referred to as "deportable.” ’ After IIRIRA, aliens who were previously referred to as ’excludable’ are termed ‘inadmissible,’ and the term 'removal *143 proceedings’ covers proceedings applicable to both inadmissible and deportable aliens. Thus, a reference to an order of removal would encompass an order of deportation.” Avila-Macias v. Ashcroft, 328 F.3d 108, 111 (3d Cir.2003).
"The Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002), eliminated the Immigration and Naturalization Service ("INS”) and assigned INS's enforcement functions to the [Department of Homeland Security]’s Bureau of Immigration and Customs Enforcement ("ICE”).” Khouzam v. Atty. Gen'l, 549 F.3d 235, 243 n. 7 (3d Cir.2008).

. I find the majority’s discussion of Kucana v. Holder, - U.S. -, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010) unnecessary. Although the government moved to reopen pursuant to a regulation, as discussed supra, I do not find that the decision to reopen under 8 C.F.R. § 1208.24 is discretionary. Therefore, the distinction between statutory and regulatory discretion is not necessary to the resolution of this case.

. "[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope.” Will v. Hallock, 546 U.S. 345, 350, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006). "[Ajlthough the Court has been asked many times to expand the 'small class’ of collaterally appealable order, we have instead kept it narrow and selective in its membership.” Id.

. Had Chehazeh sought review before our court in the first instance, I would have dismissed the appeal as untimely, as is our normal practice. See, e.g., Dajuste v. Att’y Gen., C.A. No. 11-2652 (3d Cir. Aug. 2, 2011) (order) (dismissing the petition for review for lack of jurisdiction because the motion to reopen was granted and the proceedings are therefore ongoing before the immigration judge). The parties would then have been able to develop the factual record before an immigration judge, rather than before the District Court, as the majority directs.
The majority cites Kumarasamy v. Att’y Gen., 453 F.3d 169 (3d Cir.2006), for the proposition that review is available in the courts of appeals only from a final order of removal. In Kumarasamy, the alien, who had been removed from this country, sought habeas review in the district court, arguing that the removal was illegal since no order of removal existed. The alien persisted in this argument, even after the government submitted a copy of the order of removal. The district court dismissed the habeas petition for lack of jurisdiction.
While the appeal was pending, Congress enacted the REAL ID Act, which vested jurisdiction for review of orders of removal with the courts of appeals. The REAL ID Act also required that habeas petitions challenging orders of removal before district courts or pending on appeal would be converted to petitions for review of the removal order. We concluded that Kumarasamy’s habeas appeal should *147 not be converted to a petition for review since Kumarasamy argued that no order of removal existed.
Here, no order of removal exists because Chehazeh sought, by filing for review before the District Court, to avoid the procedures established by Congress. If the established procedures are allowed to go forward as provided in the statute, and as is the normal practice in civil cases, Chehazeh will be able to obtain review of the decision reopening the case upon conclusion of the proceedings.

. I would also conclude that Chehazeh was not in custody for purposes of habeas jurisdiction.