Opinion by Judge SCHROEDER; Dissent by Judge BYBEE.
*1072 OPINION
SCHROEDER, Circuit Judge:
We deal with still another phase of litigation aimed at curing egregious constitutional violations in the operation of the California prison system. The Supreme Court in 2011 said the violations “remain uncorrected” after having “persisted for years.” Brown v. Plata, — U.S. -, 131 S.Ct. 1910, 1922, 179 L.Ed.2d 969 (2011). The Court there affirmed a three judge district court order releasing prisoners in accordance with the strictures of the Prison Litigation Reform Act (“PLRA”).
California prisons have been operating under a receivership since 2006 to comply with consent decrees. This appeal involves provisions of the PLRA relating to the termination of such decrees. Congress, concerned by what it viewed as unnecessary delays in bringing prison litigation to an end, provided that prison litigation defendants could move to terminate injunctive relief after two years, and that the injunction order would be subject to an automatic stay if the district court took more than thirty days to decide the motion. 18 U.S.C. § 3626(b)(l)(A)(i), (e)(2).
After the Supreme Court affirmed the three-judge court decision concerning the release orders in this case, the three-judge court in early 2013 asked the State when it intended to file a motion to terminate. The district court had appointed experts to evaluate the prisons’ progress and had established a schedule for reporting.
The State, anxious to end the entire litigation, responded to the three-judge court in February 2013 that it hoped to be able to file a motion to terminate the in-junctive relief within a few months. Plaintiffs indicated their need to file an informed response to any such motion, so the district court granted Plaintiffs’ motion to reopen discovery. The court ordered the State to disclose its expert witnesses and their reports at least 120 days before it filed a motion to terminate relief. This would provide Plaintiffs and the court with the ability to understand and evaluate the basis for the motion.
The State filed a notice of appeal seeking our court’s review of that order. The State contends that the order violates the PLRA by delaying its ability to move for termination and thus delaying the automatic stay that would follow after thirty days elapsed without a district court decision on the motion. See 18 U.S.C. § 3626(b)(1), (e)(2). It is apparent from the record, however, that the order is a scheduling order to coordinate the filing of a termination motion with discovery disclosures. It was crafted to fit the State’s own time line for seeking termination. While the PLRA authorizes the filing of a termination motion after two years, the State has not yet filed or attempted to file a motion to terminate. It is the nature of the litigation, not the district court’s order, that prevented the State from filing a motion earlier.
It follows that the district court’s order does not affect the availability of the automatic stay, since it would only be triggered thirty days after the filing of the motion, and then only if the district court failed to reach a decision within that time period. The district court has violated no statutory time limits.
The appropriateness of the order in this case becomes apparent with an understanding of the background of the PLRA and the historic complexity of this litigation. A time line of this litigation is attached as Appendix A.
With respect to appellate jurisdiction, we conclude that the order itself is not appealable, but the issues are sufficiently *1073 significant to warrant review by mandamus. We ultimately deny refief.
STATUTORY BACKGROUND
Congress enacted the PLRA in order to expedite prison litigation and place control over prisons back into the hands of state and local officials. See 141 Cong. Rec. S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch); 141 Cong. Rec. S14317 (daily ed. Sept. 26, 1995) (statement of Sen. Abraham). To address what Congress perceived as judicial micro-management of the nation’s prisons, see Gilmore v. California, 220 F.3d 987, 996-97 (9th Cir.2000), the PLRA established standards for the entry, enforcement, and termination of remedial relief in prison litigation, Miller v. French, 530 U.S. 327, 331, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000).
Under the PLRA, a defendant in prison litigation may move to terminate any prospective relief two years after the date the court approved the relief. 18 U.S.C. § 3626(b)(1)(A)®. The court must “promptly rule” on a motion to terminate, and mandamus shall fie where the court fails to do so. Id. § 3626(e)(1). In addition, a motion pursuant to the PLRA to terminate prospective relief operates as an automatic stay of the relief, beginning thirty days after the motion is filed and ending on the date the court rules on the motion. Id. § 3626(e)(2). The automatic stay may be postponed for up to sixty days for good cause, which does not include congestion of the court’s calendar. Id. § 3626(e)(3).
PROCEDURAL BACKGROUND
In 2001, Plaintiffs filed this class action lawsuit on behalf of California prisoners alleging that defects in the prison healthcare system violated the Eighth Amendment and the Americans with Disabilities Act. Plata v. Schwarzenegger, 603 F.3d 1088, 1091 (9th Cir.2010). Early in the litigation, the parties entered into two consent decrees. The first, in 2002, required the State to implement various remedial measures to ensure the provision of constitutionally adequate healthcare in California prisons. Id. When little progress had been made by 2004, the parties entered into an additional consent decree designed to ensure the competency of medical staff and establish appropriate procedures for identifying and treating high-risk patients. Id.
When no prison had successfully implemented these remedial measures by 2005, the district court issued an order to show cause as to why the State should not be held in contempt and why the court should not appoint a receiver to manage prison healthcare. Id. The court found that the State had “repeatedly delayed [its] progress and ultimately failed to achieve even a semblance of compliance” with the consent decrees. In early 2006, the court appointed a receiver. Id. at 1092.
In 2007, the district court granted Plaintiffs’ motion to convene a three judge court to address whether a prisoner release order was warranted. Brown v. Plata, 131 S.Ct. at 1922; see also 18 U.S.C. § 3626(a)(3) (PLRA provisions governing prisoner release orders). The three judge court issued a prisoner release order after making the requisite findings under the PLRA, and the Supreme Court affirmed that order in 2011. Brown v. Plata, 131 S.Ct. at 1923.
In early 2012, the district court ordered the parties to meet and confer regarding post-receivership planning. Several months later, the district court entered an order setting forth a receivership transition plan, which included a requirement that court-appointed experts evaluate the state of medical care at each prison.
On January 29, 2013, the three judge court directed the State to answer whether it intended to file a motion to terminate prospective relief in Plata and, if so, when *1074 it intended to file such a motion. Several weeks earlier, the State had moved to terminate prospective relief in Coleman v. Brown, a related class action concerning mental healthcare in California prisons. The State had not indicated whether it would file a similar motion in Plata.
In its response filed February 12, 2013, the State represented that it would move to terminate relief if the court-appointed experts “fail to conduct an appropriate or timely evaluation of the prison medical care system,” and that it would be ready to do so “in a few months.” Concerned that they would not have sufficient time to prepare a response to the State’s motion before the PLRA’s automatic stay took effect, Plaintiffs filed an emergency motion to reopen discovery, and the court granted it.
The district court then entered the order on review here. The court found that it would be “fundamentally unfair” to allow the State an unlimited amount of time to prepare its motion to terminate, while providing Plaintiffs only the limited time allowed by the PLRA’s automatic stay provision to prepare an adequate opposition. Citing the complexity of the case, the need for detailed factual inquiry to determine whether the case should be terminated, the restrictions of the PLRA’s automatic stay provision, and the requirements of Federal Rules of Civil Procedure 26(a)(2)(A)-(C), the court ordered the State to disclose its supporting witnesses and reports at least 120 days prior to filing a termination motion.
The State filed a notice of appeal from the district court’s order, arguing that it impermissibly extended both the time when defendants may move to terminate prospective relief under the PLRA and the time at which the PLRA’s automatic stay would take effect. Plaintiffs question whether this court has jurisdiction to review the district court’s order.
APPELLATE JURISDICTION
There is a threshold issue of jurisdiction, for Plaintiffs point out that the district court’s order is interlocutory, procedural in nature, and does not resolve any issue on the merits. They correctly contend that we lack appellate jurisdiction under 28 U.S.C. § 1291 dealing with appeals from final judgments, or under the principal avenues for appeal from interlocutory orders that decide the merits of claims or issues. See Fed.R.Civ.P. 54(b); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
The State offers four grounds for appellate jurisdiction, none of which are sufficient. The State first argues that the district court’s order is appealable as a post-judgment order. We have held that an order entered after the underlying dispute has been settled is appealable because it does not implicate the concern with avoiding piecemeal appellate review that underlies the final judgment rule. United States v. State of Washington, 761 F.2d 1404, 1406 (9th Cir.1985); see also Armstrong v. Schwarzenegger, 622 F.3d 1058, 1064 (9th Cir.2010); United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1184-85 (9th Cir.1995). Review of the order here, however, does raise the problem of piecemeal review, because this particular litigation has been in the postjudgment, remedial phase since the entry of the first consent decree in 2002. Such consent decrees operate as final judgments. Jeff D. v. Kempthorne, 365 F.3d 844, 850 (9th Cir.2004) (“[Cjonsent decrees are considered final judgments.... ”). The district court has since 2002 entered a number of orders designed to facilitate the State’s compliance with the consent decrees and help draw this case to a close. If this order were immediately appealable as a post-judgment order, then every schedul *1075 ing order setting the framework for further proceedings in this ease might also be immediately appealable. We therefore agree with the observation of the Seventh Circuit that each case management order implementing a consent decree cannot readily be considered a final post judgment order for purposes of appeal. United States v. Accra Pac, Inc., 173 F.3d 630, 632 (7th Cir.1999).
The State also argues that the district court’s order is appealable under the collateral order doctrine. This doctrine provides that some rulings that do not end the litigation will be deemed final because they are “too important to be denied review” and too independent of the merits of the case to require deferral of review. Cohen, 337 U.S. at 546, 69 S.Ct. 1221; see also Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009). To warrant review under the collateral order doctrine, the order must “(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.” Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) (citations omitted) (internal quotation marks omitted).
Plaintiffs point out that because the order is essentially a scheduling order, it does not conclusively determine or resolve any issue. Moreover, the State’s argument regarding the collateral order doctrine suffers from the same problem as its argument with respect to post judgment orders. The collateral order doctrine is a “narrow exception” that “should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal.... ” Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (internal citation omitted); see also Mohawk Indus., Inc., 558 U.S. at 106, 130 S.Ct. 599. Applying the collateral order doctrine here would open the door to piecemeal review of a large class of post judgment case management orders designed to facilitate the close of litigation. See Truckstop.net, LLC v. Sprint Corp., 547 F.3d 1065, 1068 (9th Cir.2008) (“[W]hen a court identifies an order as an appealable, collateral one, it determines the appealability of all such orders.” (citation omitted)). The order, therefore, is not appealable under the collateral order doctrine.
The State’s final arguments regarding jurisdiction arise from the PLRA itself. The PLRA provides that “[a]ny order staying, suspending, delaying, or barring the operation of the automatic stay ... shall be treated as an order refusing to dissolve or modify an injunction and shall be appealable pursuant to [28 U.S.C. § ] 1292(a)(1)....” 18 U.S.C. § 3626(e)(4). It also provides that the district court must promptly rule on any motion to terminate prospective relief, and that mandamus shall lie where the court fails to do so. Id. § 3626(e)(1). These PLRA provisions do not apply because the district court has not failed to rule on any motion to terminate. There has been none, so the district court’s order does not delay the operation of an automatic stay that would be triggered only after such a motion is filed.
Lack of jurisdiction over an appeal does not necessarily foreclose review by this court if the issues raised are significant enough to warrant review by mandamus. See, e.g., Perry v. Schwarzenegger, 591 F.3d 1147, 1157 (9th Cir.2009) (holding that mandamus is appropriate to review a discovery order that raises novel and important questions); Medhekar v. United States District Court, 99 F.3d 325, 327 (9th Cir.1996) (noting that mandamus is an especially appropriate vehicle for review where the court is confronted with an issue *1076 of first impression). We may construe an appeal of an otherwise non-appealable order as a petition for writ of mandamus and consider the issues presented under the factors set forth in Bauman v. United States District Court, 557 F.2d 650, 654-55 (9th Cir.1977). Miller v. Gammie, 335 F.3d 889, 895 (9th Cir.2003) (en banc); see also Special Invs. Inc. v. Aero Air Inc., 360 F.3d 989, 993 (9th Cir.2004); Cordoza v. Pac. States Steel Corp., 320 F.3d 989, 998 (9th Cir.2003).
“Mandamus is an extraordinary remedy that may be obtained only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.” Miller, 335 F.3d at 895 (citation omitted) (internal quotation marks omitted). This court reviews the district court’s order for clear error and grants the writ only where the district court has usurped its power or clearly abused its discretion. Id. (citation omitted). Under the five factors set forth in Bauman, we consider:
(1) whether the petitioner has no other means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court’s order is clearly erroneous as a matter of law; (4) whether the district court’s order is an oft-repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court’s order raises new and important problems or issues of first impression.
Perry, 591 F.3d at 1156 (citing Bauman, 557 F.2d at 654-55).
Because the absence of the third factor—clear error by the district court—is dispositive, Cordoza, 320 F.3d at 998; see also Perry, 591 F.3d at 1156, we first address whether the district court clearly erred in requiring the State to disclose its experts and their reports 120 days prior to filing a motion to terminate prospective relief. The State maintains the order conflicts with the PLRA’s provisions authorizing a termination motion after two years and that it interferes "with what the State seemingly views as a statutory right to a stay. The court’s order was not entered in a vacuum, however, and must be assessed in the context of the history of this litigation.
THE DISTRICT COURT DID NOT CLEARLY ERR IN ISSUING THE ORDER THAT REQUIRES DISCLOSURE AND NOTICE
The district court’s order was entered after twelve years of litigation and with an eye toward bringing it to a close. The district court had appointed experts to evaluate the state of medical care at the prisons, and the State had retained its own experts. The district court’s order requires the State to provide the court and Plaintiffs with copies of its experts’ reports at least 120 days before the State moves to terminate relief.
The PLRA itself, of course, provides that a defendant may move to terminate injunctive relief under a consent decree when two years have elapsed since its imposition. 18 U.S.C. § 3626(b)(1)(A)®. The cases interpreting the statute make this clear. As the Seventh Circuit explained, “What subsection (b)(1) does is identify a class of eases that are eligible for termination: that is, cases in which a district court must entertain motions to terminate prospective relief. If two years have elapsed since the decree was entered ... then any party is entitled to file a motion seeking termination.” Berwanger v. Cottey, 178 F.3d 834, 838 (7th Cir.1999); see also Gilmore, 220 F.3d at 999 (“Thus, any prospective relief becomes terminable, at the latest, two years after its imposi *1077 tion.”); Cason v. Seckinger, 231 F.3d 777, 780 (11th Cir.2000) (“Section 3626(b)(1)(A) establishes specified time frames under which prospective relief is terminable upon motion of a party.”).
The State in this case did not file a motion to terminate after two years. As a practical matter, the State in this particular case could not have moved to terminate after two years. At that point, medical care at the prisons had not come close to constitutional standards. In 2005—more than two years after the entry of the first consent decree—the district court found that “the California prison medical care system [was] broken beyond repair,” resulting in an “unconscionable degree of suffering and death.” A motion to terminate would likely have been futile.
The State has not indicated that it is ready to file a termination motion now. It nevertheless contends that the district court’s order violates the PLRA by requiring the State to provide notice to the court and Plaintiffs before it files such a motion.
The PLRA does not mandate the filing of motions to terminate at any particular time. The district court in this case took no action that prevented the State from filing a motion. The State had never tried to file one and does not represent it is in a position to file one now.
The State apparently takes the view that the statute is violated because, if the State wanted to file a motion immediately, it would not be permitted to do so because of the court’s order. The State’s own representations, however, reflect that it is not ready to file a termination motion. In response to the January 2013 order of the three judge court directing the State to answer whether it intended to file a motion to terminate, the State indicated that it would be prepared to bring such a motion “in a few months.”
The district court’s order was thus premised on the State’s own representations as to when it might file a motion. The order is therefore not based on an interpretation of the statute, but upon the circumstances of this case. The State indicated that it would need several months to prepare a motion to terminate; the practical effect of the court’s order is to require the State, while it is preparing its motion, to disclose the experts’ reports upon which the motion will rely.
The district court’s order does not preclude a request for modification of its terms; none has been made. The order is intended to provide the court and parties adequate notice of the evidence and the arguments supporting or opposing termination.
Moreover, nothing in the text of the PLRA prevents the district court from setting a schedule for expert disclosures. The district court’s order is consistent with its broad authority to manage complex litigation. See Fed.R.Civ.P. 16; United States v. W.R. Grace, 526 F.3d 499, 509 (9th Cir.2008) (noting that the court may issue case management orders designed to allow the parties to engage in appropriate discovery and adequately prepare their arguments). It may be for this reason the State’s argument is couched in terms of a violation of the PLRA, rather than an improper exercise of the court’s case management authority. In any event, we cannot fault the district court for wanting the parties to be informed and prepared when the State seeks to terminate relief.
Indeed, the Federal Rules of Civil Procedure require pretrial notice of the expert witnesses and reports to be relied- upon. See Fed.R.CivJP. 26(a)(2)(A)-(E). The dissent prefers to characterize the order as an artificial notice requirement imposed to create delay in this particular case, but it actually is an order for expert disclosures pursuant to the Federal Rules of Civil Procedure.
*1078 The relief ordered in this case is complex and has affected thirty-three different institutions for nearly twelve years. See Brown v. Plata, 131 S.Ct. at 1939 (noting the “long history of failed remedial orders” in the case). Providing Plaintiffs with notice that the State intends to file a motion to terminate will allow both the State and Plaintiffs to have an adequate record on which the district court may decide the merits of the motion. With the benefit of informed briefing from both parties, the district court will be able to make a timely ruling on a motion to terminate, as the PLRA contemplates. See 18 U.S.C. § 3626(e)(1).
It appears that the State’s more practical concern is with obtaining the automatic stay that the PLRA mandates if the district court does not rule on the motion to terminate within thirty days. See id. § 3626(e)(2). The legislative history of the PLRA indicates that Congress was concerned about district courts taking too much time to decide termination motions and thus extending the life of decrees well beyond the filing of defendants’ motions to terminate them. H.R.Rep. No. 104-21, at 26 (1995) (“By providing that the prospective relief that is subject to the motion will be stayed if the motion is not decided promptly, judges will be motivated to decide the motions and avoid having the stay automatically take effect.”); see also 143 Cong. Ree. S12269 (daily ed. Nov. 9,1997) (statement of Sen. Abraham) (noting that the purpose of the automatic stay provision is to “discourage delay” in ruling on motions to terminate). The automatic stay was thus not intended to reward the defendant filing a termination motion, but to provide an incentive for the district court to act promptly when such a motion is filed.
The State asserts that the court’s order violates the statute by delaying the operation of the stay. Yet pursuant to the statute, the stay is triggered only by the district court’s failing to decide a termination motion within thirty days. If no motion has been filed, there can have been no decisional delay triggering the stay.
The words of the statute expressly limit the judge’s time to decide a motion to terminate. 18 U.S.C. § 3626(e)(2). They do not repeal the Rules of Civil Procedure that authorize discovery and require disclosure. They do not endorse sandbagging.
The district court’s order is consistent with the Supreme Court’s decision in Miller v. French, 530 U.S. 327, 120 S.Ct. 2246. There the Court held that the PLRA prohibits district courts from exercising their equitable authority to suspend the operation of the automatic stay. Id. at 338, 120 S.Ct. 2246. The order here does not affect the operation of the automatic stay. Any possible stay of relief is conditioned on two events that have not yet occurred: the filing of a motion to terminate, and the district court’s failure to rule on that motion within the time allowed. The State cannot file a motion to terminate until at least some of the experts’ reports on the State’s compliance are in. The district court’s order does nothing more than coordinate the filing of a termination motion with the discovery each side wanted. It embodies the fundamental principle the Supreme Court laid down more than 60 years ago: “Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.” Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947).
The order thus also furthers the purpose of the automatic stay provision by ensuring that the district court has the information it needs to rule quickly on a motion to terminate. On the basis of the record before this court, there is no reason to *1079 hold the district court’s order has prejudiced the State in any way.
CONCLUSION
The district court’s order is a sensible scheduling order designed to provide the court and Plaintiffs with adequate notice of the evidence the State intends to rely upon in a motion to terminate. The order establishes a schedule for expert disclosures that is consistent with the State’s own time line, and it does not affect the operation of the automatic stay. There was no clear error in the district court’s issuance of the order.
Because we uphold the district court’s order as consistent with the provisions of the statute, we need not reach Plaintiffs’ claim that without the notice provisions of the order, the automatic stay provision violates due process.
The State’s appeal is construed as a Petition for Writ of Mandamus. So construed, the petition is DENIED.
APPENDIX A
DATE EVENT
April 5, 2001 Plaintiffs file their Complaint.
June 13,2002 District court approves the parties’ stipulation and order for injunctive relief.
September 17, 2004 District court approves the parties’ stipulation and order regarding the quality of patient care and staffing.
May 10, 2005 District court orders the State to show cause why it should not be held in contempt for failing to comply with prior orders and why the court should not appoint a receiver to manage the prison health care system.
October 3, 2005 District court issues its findings of fact and conclusions of law regarding the order to show cause. District court states that it will hold the contempt citation in abeyance and establish a receivership to remedy constitutional violations.
February 14, 2006 District court appoints a receiver and suspends the authority of the Secretary of the California Department of Corrections and Rehabilitation.
November 13, 2006 Plaintiffs move to convene a three-judge court to address whether prison overcrowding violates their constitutional rights.
July 23, 2007 District court grants Plaintiffs’ motion to convene a three-judge court.
July 26, 2007 Ninth Circuit designates a three-judge court.
January 28, 2009 State moves to replace the receiver with a special master and to terminate the receiver’s plan regarding construction of additional prisons.
March 24, 2009 District Court denies the State’s motion to replace the receiver with a special master and to terminate the receiver’s plan regarding construction of additional prisons.
August 4,2009 Three-judge court orders reduction of the prison population.
*1080 April 30, 2010 Ninth Circuit affirms the district court’s denial of the State’s motion to replace the receiver with a special master and to terminate the receiver’s plan regarding construction of additional prisons.
May 23, 2011 Supreme Court affirms the order of the three judge court requiring reduction of the prison population.
September 5, 2012 District court issues an order setting forth a plan to transition from the receiver to a special master and to begin expert evaluations of California’s prisons.
January 29, 2013 Three judge court directs the State to answer whether it intends to file a termination motion.
February 12, 2013 State represents in its response and objections to the January 29, 2013 order of the three judge court that if court-appointed experts “fail to conduct an appropriate or timely evaluation of the prison medical care system,” the state will file a termination motion “in a few months.”
February 14, 2013 Plaintiffs move to reopen discovery.
February 19, 2013 District court grants Plaintiffs’ motion to reopen discovery.
February 21, 2013 District court orders a schedule for expert disclosures should the state opt to file a termination motion.
March 11,2013 State appeals the district court’s February 21, 2013 order.