POLLARD, Judge, concurring in part and dissenting in part:
I concur in the Court's order pertaining to admissibility of documents to the extent that it:
*1244 (1) Denies appellee's motion to strike appellant's brief, reply brief and the following portions of its unclassified appendix: (a) statutes, court rules, court regulations and reference materials; (b) military commission exhibits and transcripts in appellee's case; and (c) exhibits or transcripts from the other military commission cases specified in the order; and
(2) Substitutes the documents and transcript submitted by the Director, Office of Court Administration, Office of Military Commissions on March 12, 2018, for duplicates of the documents submitted by the parties and intervenors.
I dissent from the balance of the order.
In addition to the documents identified above, both parties filed other documents with the Court that are not in the commission record. They are: (a) by appellant, the May 21, 2018 declaration of Col. John B. Wells and attachments thereto and (b) by appellee with his July 2, 2018 Supplemental Brief, more than 300 pages of classified documents that he asked the Court to consider if, absent an evidentiary hearing, the Court addresses the intrusion question presented by appellant.
The Wells Declaration contains five attachments. The first is a transcript of the proceedings below on July 31, 2017. The second is an unsworn summary of facts as advocated by the Government relating to the intrusion allegations. That summary also is a part of the appellant's March 5, 2018 brief opposing appellee's motion to dismiss the appeal for lack of jurisdiction. App. B. The third and fourth attachments are, respectively, the classified declarations of the Commander, Joint Detention Group at Naval Station Guantanamo Bay and the Central Intelligence Agency Deputy General Counsel for Litigation and Investigations. The fifth attachment is an excerpt from AE 369MM. The two declarations also comprise the classified appendix submitted with Appellant's Reply Brief and Extra-Record Evidence in a classified appendix.
Except for the transcript and the excerpt from AE369MM, none of these documents is a part of the commission record before the military judge at the time he entered his February 16, 2018 abatement order. Therefore, for the reasons further explained in my opinion concurring in part and dissenting in part from the Court's opinion resolving the Government's appeal, our Court may not permit the parties to supplement the commission record before us to include these documents, or do sosua sponte. Our Court also may not rely upon any declaration and other extra record documents submitted by appellant, as it does, in its ruling on the military judge's intrusion finding.
Accordingly, I concur in part and respectfully dissent in part, from the Court's order.
*1245 FOR THE COURT:
Mark Harvey Clerk of Court, U.S. Court of Military Commission Review
*1246 Appendix A
United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT No. 18-1087 September Term, 2017 CMCR-18-002 Filed On: May 10, 2018 Mary E. Spears and Rosa A. Eliades, Petitioners v. United States of America, Respondent
BEFORE: Millett, Pillard, and Wilkins, Circuit Judges
ORDER
Upon consideration of the emergency motion for stay of proceedings before the United States Court of Military Commission Review pending appeal, the response thereto, and the reply, it is
ORDERED that the United States Court of Military Commission Review's issuance of a final decision on the merits of the government's pending appeal inUnited States v. Abd Al-Rahim Hussein Muhammed Abdu al-Nashiri, CMCR No. 18-002, be administratively stayed pending further order of this court. The purpose of this administrative stay is to give this court sufficient opportunity to consider the emergency motion for stay and should not be construed in any way as a ruling on the merits of that motion.See D.C. Circuit Handbook of Practice and Internal Procedures 33 (2018). This administrative stay is limited to barring the issuance of a decision resolving the substantive merits of the issues presented in the government's appeal. The stay does not extend to other case-management matters, including the submission of briefs, the appearance, admission, appointment or release of counsel (and evaluation of any attendant mootness implications), or the disposition of motions. It is
FURTHER ORDERED, on the court's own motion, that the parties file supplemental briefs, not to exceed 6,500 words, by Noon on Monday, May 21, 2018. While not otherwise limited, the parties are directed to address:
*1247 (1) Whether existing rules or procedures applicable to military commissions may permit intervention as of right or any similar procedure. Cf. Military Commissions Trial Judiciary Rule of Court 3.5.q (A Third Party Filing will be considered by a military commission only when the presiding military judge determines it is appropriate or required to be considered.);
(2) Whether a third party, whose own legal interests both are immediately and directly affected by a commission order and cannot be vindicated at the conclusion of the defendant's case, has a right to appeal a commission order as applied to that party (i) pursuant to 10 U.S.C. § 950g; (ii) under Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949); see Khadr v. United States, 529 F.3d 1112, 1117-1119 (D.C. Cir. 2008); Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100 (2009); (iii) as within this court's ancillary jurisdiction; or (iv) on any other jurisdictional basis;
(3) Whether there is a legal basis for petitioners' asserted personal interest, right, or entitlement-distinct from al-Nashiri's-to communicate confidentially with their client, to preserve the confidentiality of their work process and product, and/or to avoid transgressing rules of professional ethics that supports their claim of injury. See, e.g., Pets. Reply Br. 4-6. Briefing also should address whether and how the Commission's order for petitioners to continue their representation of al-Nashiri, notwithstanding their release from that representation by Brigadier General John G. Baker, has and/or will imminently cause a cognizable injury to petitioners; and
(4) Whether, if petitioners have a distinct legal right to withdraw from representation, deprivation of that right by an Article I court without any opportunity for judicial review by an Article III court other than through a petition for writ of mandamus, is constitutional.
It is
FURTHER ORDERED that the government submit to the court by Noon on Monday, May 21, 2018, in accordance with procedures governing classified information if warranted, a declaration describing any and all intrusions that have occurred, may have occurred, or that the government believes foreseeably could occur into the confidentiality of (i) petitioners' communications with their client, (ii) petitioners' communications with other lawyers, legal personnel, support personnel, or third parties as part of their representation of their client, or (iii) petitioners' legal work product, legal files, or legal records (electronic or otherwise). In addition, the government is directed to submit to the court:
*1248 (1) Any classified or unclassified information provided by the government to Brigadier General John G. Baker, in his capacity as Chief Defense Counsel for the Military Commission Defense Organization, regarding alleged breaches, accidental or otherwise, of attorney-client confidentiality and/or work product privilege pertaining to the representation by attorneys under his supervision of detainees at Guantanamo Bay, Cuba (see generally Oct. 11, 2017, Memoranda, Att. B to Exhs. D & E in Pets.' Corrected Emergency Motion for Stay, No. 18-1087); and
(2) Documents provided by the government to Judge Spath in this case in connection with defendant's motion to compel discovery regarding potential intrusions into attorney-client confidentiality, including, but not limited to docket entries AE369PP, AE369UU, AE369YYY, and AE369ZZZ.
It is
FURTHER ORDERED that this case be calendared for oral argument before this panel at 9:30 a.m. on Thursday, May 24, 2018. The parties are directed to hand-deliver paper copies of the supplemental submissions to the court by the time and date due, and in accordance with procedures governing classified information, where relevant.
Per Curiam
FOR THE COURT: Mark J. Langer, Clerk BY: /s/ Daniel J. Reidy Deputy Clerk
*1249 UNCLASSIFIED//FOR PUBLIC RELEASE
Appendix B
1) In 2013, the defense team for Mr. al Nashiri requested accommodation to conduct privileged attorney-client meetings outside of designated meeting locations that are specially configured for that purpose, and used by other detainees in military commissions cases. Joint Task Force - Guantanamo (JTF-GTMO) found a location acceptable to the defense team and approved it for their use. Meetings between Mr. al Nashiri and his attorneys in that location began in April 2014 and continued until June 2017. During this period, Mr. al Nashiri used one specific room at that location for his attorney-client meetings, except when he met with his counsel in several locations in and around the Expeditionary Legal Complex (ELC), which is away from the detention facilities entirely.
2) The new meeting location was not built or specifically designed for attorney-client meetings. Prior to the defense team's request, rooms in this building - including the one ultimately used by Mr. al Nashiri-were configured for detainee interviews. The rooms in the building in April 2014 thus included disconnected, legacy microphones that were not connected to any audio listening/recording device. While it was apparent that this room serving as the new meeting location had been previously configured for interviews, no audio equipment was used while Mr. al Nashiri was in the room. According to routine meeting logs, counsel used this room for meetings with Mr. al Nashiri on more than 50 days during this period, sometimes more than once in a day; the disconnected, legacy microphones in the meeting room were never in use during these meetings.
3) The new meeting location was previously used for interviews of general-population (non-HVD) detainees as late as 2011. The meeting room is located in a building in a compound that JTF-GTMO exclusively controls. There are no records of the use of the building to conduct interviews after 2011.
4) Like many buildings that JTF-GTMO maintains, the building housing the new meeting location had not been designed to accommodate privileged attorney-client meetings. With limited funds available to build such facilities over the last decade, repurposing existing structures was often the only feasible option when new requirements emerged. Various court orders and Department of Defense directives to preserve evidence and structures potentially relevant to litigation further limited the JTF's ability and inclination to remove old equipment and confirm that it had been removed.
5) In late April 2017, in an entirely separate location not used by Mr. al Nashiri, the JTF Commander learned that attorney-client communications occurring outside of designated locations may have been overheard. After the Commander immediately stopped allowing attorney-client privileged meetings at this location, United States Southern Command (USSOUTHCOM) conducted an investigation into the facts and circumstances of the incident. The investigation formally commenced on 10 May 2017. This investigation concluded that a small number of detainees-none of whom were in contested military commission proceedings-were allowed to meet with their attorneys outside of designated meeting locations. This accommodation for the detainee legal teams resulted in attorney-client meetings being unintentionally overheard. The investigation further concluded that no one involved in legal proceedings or the JTF chain of command overheard these communications, and that this incident did not result from the culpable negligence or misconduct of any U.S. Government *1250 personnel. JTF-GTMO has implemented safeguards to ensure that this situation cannot reoccur. Again, this incident and subsequent investigation did not involve Mr. al Nashiri, his attorneys, or the meeting location that they used. Mr. al Nashiri has never met with his attorneys at the other location, i.e., the one where attorney-client communications were unintentionally overheard. No intrusions into attorney-client privilege occurred in any meeting between Mr. al Nashiri and his attorneys.
6) Following report of this incident, the Joint Detention Group (JDG) Commander executed a declaration on 30 June 2017, wherein he stated that Standard Operating Procedures (SOPs) strictly prohibit any compromise of privacy in attorney-client meetings spaces, and he offered- as his predecessor did in 2013-to allow defense counsel to personally inspect legal meeting rooms. Accepting this offer, Mr. al Nashiri's counsel conducted this inspection on 2-3 August 2017. During that inspection, they located a legacy microphone that, although not in use and not connected to any audio listening/recording device, had not been removed from the room.
7) Afterward, the defense team refused to meet in this room with Mr. al Nashiri. The JTF then offered several alternative meeting locations which would meet their needs. Since October 2017, members of Mr. al Nashiri's defense team have conducted their meetings with Mr. al Nashiri in and around the ELC-away from the detention facilities entirely. This was one of the options provided by the JTF.
8) Starting in late October 2017, the JTF removed flooring, walls, and fixtures in the new meeting location. The JTF confirmed that legacy microphones, which were not connected to any audio listening/recording device nor in an operable condition, were removed.