**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VIVOS THERAPEUTICS, INC.,

    Plaintiff - Appellee,

v.

ORTHO-TAIN, INC.,

    Defendant - Appellant.

No. 24-1061

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:20-CV-01634-WJM-JPO)**
_____

Nathan I. Neff, Neff Law Group PC, Chicago, Illinois, for Defendant-Appellant.

Brenna G. Fisher (Kevin Walton with her on the briefs), Snell & Wilmer LLP, Denver, Colorado, for Plaintiff-Appellee.
_____

Before **HARTZ**, **TYMKOVICH**, and **EID**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

On this interlocutory appeal, Ortho-Tain, Inc. challenges, under collateral-order jurisdiction, the district court's denial of its motion to dismiss based in part on absolute litigation immunity and, under pendent appellate jurisdiction, several other rulings of the court. Following the law of the case established in a prior appeal in this

matter,[1] we conclude that we do not have jurisdiction over the denial of immunity because it turned on a disputed factual issue. And without appellate jurisdiction to review that ruling, we cannot exercise pendent jurisdiction over the remaining interlocutory rulings. Accordingly, we dismiss this appeal for lack of jurisdiction.

## I.    BACKGROUND

Our prior opinion in this case sets forth the factual background. *See Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, No. 21-1309, 2022 WL 2223141, at \*1–2 (10th Cir. June 21, 2022) (*Vivos I*). We repeat only what is necessary to resolve this appeal.

Vivos sued Ortho-Tain in the United States District Court for the District of Colorado after Leslie Stevens, Ortho-Tain's chief executive officer, and Nathan Neff, its attorney, sent a series of communications to Benco Dental Supply, accusing Benco of hosting seminars where Vivos misrepresented Ortho-Tain's products as Vivos's own products. In response to the lawsuit, Ortho-Tain sued Vivos in the United States District Court for the Northern District of Illinois.

Vivos later filed an amended complaint asserting six claims against Ortho-Tain: Count I – False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); Count II – Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105; Count III – Libel Per Se; Count IV – Slander Per Se; Count V –

---

[1] Later footnotes in this opinion, however, express our doubts about the present validity of two of the statements of law in our prior unpublished opinion.

Intentional Interference with Contractual Relations; and Count VI – Declaratory Judgment that Vivos Did Not Violate the Lanham Act.

Ortho-Tain moved to dismiss the amended complaint. Among other things, it argued that Counts III, IV, and V should be dismissed because the communications underlying those claims were preliminary to and related to the Illinois litigation and therefore protected by the Colorado litigation privilege.

When the district court denied the motion, Ortho-Tain appealed. We held that we lacked jurisdiction over the denial of immunity for Neff's communications because that denial turned in part on disputed factual questions. We did, however, assert jurisdiction over the denial of immunity for Stevens's communications, which had been based on the purely legal ground that nonattorneys could not invoke the privilege. We held that the privilege *can* apply to nonattorneys and that the district court should have reviewed Stevens's and Neff's statements together to see whether their statements, as a whole, related to the Illinois litigation and whether that litigation was contemplated in good faith. We declined to exercise pendent jurisdiction over Ortho-Tain's appeal of the other interlocutory rulings.

On remand the district court again denied Ortho-Tain's motion to dismiss. *See Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, No. 20-cv-1634-WJM-JPO, 2024 WL 625704, at *1 (D. Colo. Feb. 14, 2024). Regarding the immunity issue, it explained that it would not "delve into the factfinding endeavor of whether the communications in spring of 2020 were made in good faith contemplation of litigation." *Id.* at *3.

Ortho-Tain appealed again. Vivos has moved to dismiss the appeal for lack of jurisdiction.

## II.    DISCUSSION

### A.    Law of the Case

As we stated in the opening paragraph of this opinion, the outcome of this appeal is determined by the law-of-the-case doctrine. "Under this doctrine, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Cressman v. Thompson*, 798 F.3d 938, 946 (10th Cir. 2015) (internal quotation marks omitted). "We will only deviate from the law of the case (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* (internal quotation marks omitted). We will have occasion to address exceptions (2) and (3) in footnote 3.

### B.    Appellate Jurisdiction Over Immunity Claim

#### 1.    *The Litigation Privilege*

Before addressing appellate jurisdiction, we must say a few words about the litigation privilege. Neither party disputes that we review the claim of privilege under Colorado law. Colorado has adopted the "formulation of the [litigation] privilege in [§ 586 of] the Restatement (Second) of Torts." *Killmer, Lane & Newman, LLP v. BKP, Inc.*, 535 P.3d 91, 96 (Colo. 2023) (internal quotation marks omitted). Section

4

586 provides that "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel." *Id.* (internal quotation marks omitted).

The Colorado Court of Appeals has set forth the following elements for the privilege to apply: "(1) the statement must have some relation to the subject matter of the litigation; (2) the statement must be made in furtherance of the objective of the litigation; and (3) in the case of prelitigation statements, the proceedings must actually be contemplated in good faith." *Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 598 (Colo. App. 2024). Elaborating on the third element, the Colorado Supreme Court has said that the privilege applies to "pre-litigation statements only if they have some relation to a proceeding that is actually contemplated in good faith. Thus, an attorney cannot make a defamatory statement and then cloak it in the privilege by subsequently filing a bad faith and meritless claim related to the otherwise tortious statement." *Killmer*, 535 P.3d at 96 (citation and internal quotation marks omitted).

After reviewing the pleadings, the district court declined to make any factual finding on whether Ortho-Tain made the prelitigation statements at issue in good faith. *See Vivos Therapeutics*, 2024 WL 625704 at *3. It wrote:

> Given that this action is at the pleading stage, and that the Court must construe the allegations in the light most favorable to Vivos, the Court declines to delve into the factfinding endeavor of whether the

5

communications in spring of 2020 were made in good faith contemplation of litigation. Finding that Ortho-Tain has failed to set forth a convincing basis for dismissal on this ground, the Motion [to Dismiss] is denied to the extent it seeks dismissal of the defamation and intentional interference with contractual relations claims based on litigation privilege.

*Id.* (footnote omitted).

### 2. *Appellate Jurisdiction*

We lack jurisdiction to review this ruling by the district court. In *Vivos I* we said that "the collateral order doctrine permits immediate appellate review of an interlocutory order denying a motion to dismiss based on a claim of absolute immunity under the litigation privilege." 2022 WL 2223141 at *2.[2] But we also

---

[2] Our opinion relied on *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991), for the proposition that we have jurisdiction under the collateral-order doctrine to review a denial of the litigation privilege by a district court. *See Vivos I*, 2022 WL 223141 at *2. Although that statement may bind this panel under the law-of-the-case doctrine, we note that our prior opinion in this case was not published and is not binding precedent. And, for the reasons that follow, we caution that the holding in our published opinion in *Robinson* may no longer be good law.

"The collateral order doctrine, first recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), allows a 'small class' of interlocutory orders to be immediately reviewable under [28 U.S.C.] § 1291." *United States ex rel. Fiorisce, LLC v. Colo. Tech. Univ., Inc.*, 130 F.4th 811, 816 (10th Cir. 2025). To fall within this small class, the non-final order must be "conclusive," "resolve [an] important question[] completely separate from the merits" of the action, and be "effectively unreviewable on appeal from final judgment in the underlying action." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994).

In *Will v. Hallock*, handed down 15 years after our decision in *Robinson*, the Supreme Court described these conditions as "stringent." 546 U.S. 345, 349 (2006) (internal quotation marks omitted). In particular, the Court reviewed its prior decisions and extracted from them an additional limitation on the third condition— namely, an interlocutory ruling is "effectively unreviewable" only if delaying review until after final judgment "would imperil a substantial public interest." *Id.* at 353 (internal quotations marks omitted); *see id.* ("[I]t is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until

later."). Examples of these interests reflecting "some particular value of a high order" include "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interest, and mitigating the government's advantage over the individual." *Id.* at 352–53.

Over the past 40 years the Supreme Court has repeatedly declined to extend collateral-order treatment to orders stemming from litigation between private parties. For example, in *Richardson-Merrell, Inc. v. Koller*, the Court rejected the circuit court's argument that pretrial orders disqualifying counsel in a civil case should be immediately appealable to "vindicate the client's choice of counsel" and the "interest of the attorneys, who are parties to [such an appeal], in correcting what they claim is an erroneous finding of misconduct." 472 U.S. 424, 433 (1985) (internal quotation marks omitted). The lower court further contended (1) that the improperly sanctioned attorney might never be able to obtain vindication because the client might be satisfied with the final judgment and have no incentive to appeal and (2) that the unavailability of a prompt appeal could encourage excessive motions to disqualify counsel. *See id.* In the view of the Supreme Court, however, these concerns could not outweigh the virtues of the finality rule. *See id.* at 433–40.

Similarly, in *Digital Equipment Corp.*, 511 U.S. at 865, the Court rejected an interlocutory appeal of "an order vacating a dismissal [of a lawsuit] predicated on the [private] parties' settlement agreement," thereby subjecting the appealing party to further litigation on the merits of the underlying cause of action. The petitioner had argued in favor of immediate appeal on the ground that "settlement-agreement 'immunities' . . . advance the public policy favoring voluntary resolution of disputes." *Id.* at 881.

Most striking perhaps is the definitive decision in *Mohawk Industries, Inc. v. Carpenter*, which rejected the proposition that orders denying a claim of attorney-client privilege should be immediately appealable despite the Court's recognition of "the importance of the attorney-client privilege" and that it "serves broader public interests in the observance of law and administration of justice." 558 U.S. 100, 108 (2009) (internal quotation marks omitted). It explained that courts "routinely require litigants to wait until after judgment to vindicate valuable rights, including rights central to our adversarial system." *Id.* at 108–09. Of particular importance is the Court's recognition of congressional legislation in 1990 permitting the judiciary "to prescribe rules . . . to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for" by statute. *Id.* at 114 (internal quotation marks omitted). Noting the "important virtues" of the rulemaking process, the Court concluded that "[a]ny further avenue for immediate appeal of [interlocutory] rulings should be furnished, if at all, through rulemaking." *Id.* We take that as a strong signal to refrain from expanding the set of collateral-order appeals permitted by the Supreme Court. *See Fiorisce*, 130 F.4th at 817 ("[T]he Supreme Court has declared that Congress's choice to prefer rulemaking to judicial decision in this area warrants the Judiciary's full respect. . . . [A]ny request for expansion of the *Cohen* doctrine

7

recognized that when "a district court cannot rule on the merits of an immunity defense at the dismissal stage because the allegations in the pleadings are insufficient as to some factual matter, the district court's determination is not immediately appealable." *Id.* at *2 (brackets, ellipsis, and internal quotation marks omitted). We relied on *Weise v. Casper*, *see id.*, which explained:

> [T]he Supreme Court has limited appeals of interlocutory decisions denying the defense of qualified immunity to cases presenting neat abstract issues of law. In contrast, pretrial determinations of evidentiary sufficiency in qualified immunity cases are not immediately appealable. . . . [Two rationales] support this distinction. First, evidentiary sufficiency determinations are not separable from a plaintiff's claim and thus do not constitute final decisions under *Cohen* [*v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)] and *Mitchell* [*v. Forsyth*, 472 U.S. 511 (1985)]. Second, considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of qualified immunity matters to cases presenting more abstract issues of law. These principles apply to

---

should be directed to the rules committee, not this court." (original brackets and internal quotation marks omitted)).

More directly in point, although not precedential in this circuit, are decisions by other federal appellate courts overruling their own precedents permitting appeals of denials of the litigation privilege in light of the Supreme Court's opinion in *Will*. *See Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944, 950–51 (6th Cir. 2006) ("[E]ven if we assume that advocacy immunity [(apparently an equivalent, or at least a close cousin, of the litigation privilege)] protects attorneys from the burdens of trial, the asserted interest that interlocutory appeal will allegedly protect—'preserving the integrity of the judicial process, and the free and unfettered administration of justice'—is not of comparable 'high order' to those interests identified in *Will*."); *McNair Builders, Inc. v. Taylor*, 3 A.3d 1132, 1135–42 (D.C. 2010) (overruling precedent from 2001). *But see Grippa v. Rubin*, 133 F.4th 1186, 1194–97 (11th Cir. 2025) (citing our *Robinson* decision in support of holding that collateral-order doctrine permits appeal from denial of absolute litigation privilege).

We need not, however, decide whether *Will* abrogates *Robinson* to resolve this case. Even assuming that *Robinson* allows some orders denying absolute immunity under the litigation privilege to be appealed immediately, we must reject jurisdiction on other grounds. *See infra*.

8

interlocutory appeals at either the dismissal or summary judgment stage of a litigation.

507 F.3d 1260, 1263–64 (10th Cir. 2007) (citations and internal quotation marks omitted). Although *Weise* dealt with qualified immunity, its rationale applies with equal force in absolute-immunity cases like this one.[3]

---

[3] It may be debated whether our 2007 opinion in *Weise* remains good law. In *Ashcroft v. Iqbal*, 556 U.S. 662, 671–75 (2009), the Supreme Court held that there is appellate jurisdiction to review a district court's denial of a motion to dismiss a complaint for failure to state a claim that can overcome a qualified-immunity defense. It said that "[e]valuating the sufficiency of a complaint is not a 'fact-based' question of law." *Id.* at 674. "The concerns that animated the decision in *Johnson* [*v. Jones*, 515 U.S. 304 (1995) (holding that interlocutory appeals of the denial of qualified immunity are limited to abstract questions of law)] are absent when an appellate court considers the disposition of a motion to dismiss a complaint for insufficient pleadings." *Id.* Thus, in *Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010) (Gorsuch, J.), we cited *Iqbal* (without mentioning *Weise*) for the proposition that "we need not defer to the district court's assessment of the reasonable factual inferences that arise from a complaint at the motion to dismiss stage, but may instead assess for ourselves the sufficiency of the complaint as a matter of law *de novo*." *See also A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 573 & n.5 (10th Cir. 2021) (stating that "circuit courts have jurisdiction to review the sufficiency of the allegations in interlocutory appeals from denials of qualified immunity," and distinguishing *Weise* as pre-*Iqbal*).

In any event, we are bound by the law-of-the-case doctrine to follow our decision in *Vivos I* because there has been no intervening precedent contrary to that decision. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* 483 (2016) (stating that for the change-in-authority exception to the law-of-the-case doctrine to apply, the "intervening change in the law . . . must postdate the decision that would otherwise constitute the law of the case" (internal quotation marks omitted)). Perhaps the miscarriage-of-justice exception to the doctrine could apply here, *see id.* at 485–89, but we see no possible miscarriage in following *Vivos I* on this point. The result on appeal would be the same if we followed *Iqbal*, because we fail to see anything in the amended complaint that would require this court to hold that the complaint establishes the good faith of the defendants. *See United States v. F.E.B. Corp.*, 52 F.4th 916, 927 (11th Cir. 2022) ("As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." (internal quotation marks omitted)); *see also United States v. Craine*, 995 F.3d 1139, 1154 n.6 (10th Cir. 2021) ("[T]he issue as to a person's state of mind almost

The district-court ruling challenged on this appeal is virtually identical to the ruling by the district court challenged in *Vivos I. See* 2022 WL 2223141 at *3 (quoting district-court statement that "given that this action is at the pleading stage, and that the Court must construe the allegations in the light most favorable to Vivos, the Court declines to delve into the factfinding endeavor of whether Neff made these communications in good faith contemplation of litigation" (brackets and internal quotation marks omitted)). There, we held that such a statement deprives this court of interlocutory appellate jurisdiction. *See id.* That holding is law of the case and controls this appeal.

Ortho-Tain disagrees. It argues that the district court "declined to perform th[e] proper analysis" that we laid out in *Vivos I*. Ortho-Tain Resp. to Motion to Dismiss Appeal at 7. It contends that if the district court had correctly followed *Vivos I*, it would have seen that Ortho-Tain clearly contemplated the Illinois litigation in good faith. It invites us to review the complaint and exhibits to make our own factual finding of good faith. But, as we explain, the district court followed our instructions, and the decision in our prior appeal precludes the factual inquiry requested by Ortho-Tain.

In *Vivos I* we directed the district court to "analyze[] all of the Spring 2020 communications, including Stevens' letter and Neff's follow-up communications,

---

invariably presents an issue of fact." (internal quotation marks omitted)); *Wertheim & Co. v. Codding Embryological Scis., Inc.*, 620 F.2d 764, 766 (10th Cir. 1980) (noting that whether a person "acted in complete good faith" is "almost invariably" an issue of fact).

together." 2022 WL 2223141 at *4. We said that the court should determine whether those communications "related to the Northern District of Illinois litigation and whether that litigation was contemplated in good faith." *Id.*

The district court did as we instructed on remand. It first summarized the legal standard for reviewing a motion to dismiss for failure to state a claim. *See Vivos Therapeutics*, 2024 WL 625704 at *2. It next "amended [its] analysis of Ortho-Tain's claim of the litigation privilege" in light of *Vivos I. Id.* at n.1. After reviewing "the plaintiff's well-pleaded factual allegations" and "view[ing] them in the light most favorable to the plaintiff," *id.* at *2 (internal quotation marks omitted), it concluded that the allegations in the amended complaint were insufficient to make a finding on "whether the communications in spring of 2020 were made in good faith contemplation of litigation," *id.* at *3. It then told the parties to meet with the magistrate judge to discuss how "to move this litigation forward." *Id.* at *5; *see Stonecipher v. Valles*, 759 F.3d 1134, 1149 (10th Cir. 2014) ("If, however, the district court determines it cannot rule on the immunity defense without clarifying the relevant facts, the court may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." (internal quotation marks omitted)).

What we said on the prior appeal governs our decision here: "Although the district court did not expressly say the pleadings were inadequate to make a finding as to good-faith," it nevertheless "noted the good-faith requirement and declined to make the necessary factual finding." *Vivos I*, 2022 WL 2223141 at *3. "Clearly, then,

11

the district court found the pleadings insufficient." *Id.* "It follows that the denial of immunity" for the spring 2020 communications "does not turn on a legal question and thus is not immediately appealable." *Id.* Ortho-Tain has provided no argument that would distinguish the present appeal from the prior appeal on this issue.

### C.    Pendent Jurisdiction

Ortho-Tain requests that we exercise our pendent jurisdiction to review the district court's other interlocutory rulings. We decline the invitation. Pendent appellate jurisdiction requires at least one appealable order. Otherwise, nothing can be pendent. *See Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1269 (10th Cir. 2022) ("We can exercise pendent appellate jurisdiction *only* when an unappealable decision is inextricably intertwined with an *appealable* ruling or meaningful review of the appealable decision would require review of the otherwise unappealable decision." (emphasis added, bullet points and internal quotation marks omitted)); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1205 (10th Cir. 2008) ("This court has discretion to exercise pendent appellate jurisdiction over nonappealable issues once we have asserted jurisdiction over other appealable issues in the same case." (brackets and internal quotation marks omitted)); 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3937 at 822 (3d ed. 2012) ("The starting point in measuring pendent appellate jurisdiction is simple. There must be an independently appealable order that establishes court of appeals jurisdiction."). Because we hold that Ortho-Tain failed to

raise an appealable ruling, we cannot exercise pendent jurisdiction over the district court's remaining interlocutory rulings.

## III.  CONCLUSION

We **GRANT** Plaintiff-Appellee's Motion to Dismiss for Lack of Jurisdiction and **DISMISS** this appeal.