**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DR. RACHEL TUDOR,

    Plaintiff - Appellee,

v.

EZRA YOUNG; BRITTANY STEWART,

    Defendants - Appellants,

and

MARIE E. GALINDO; THE LAW
OFFICE OF JILLIAN T. WEISS, P.C.;
TRANSGENDER LEGAL DEFENSE
AND EDUCATION FUND, INC.,

    Defendants.

No. 24-6207
(D.C. No. 5:22-CV-00480-JD)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

_____

Before us is an interlocutory appeal from a ruling in a statutory interpleader

action.  Appellants Ezra Young and Brittany Stewart seek to collect their contested

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

attorney fees. They contend that we have jurisdiction under the collateral-order doctrine to resolve their appeal, despite the pendency of proceedings in the district court. But because the collateral-order doctrine does not apply in these circumstances, we dismiss this appeal for lack of jurisdiction.

I

Appellee, Rachel Tudor, was the prevailing party in a previous employment dispute that we remanded for calculation of attorney fees owed her. *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1049 (10th Cir. 2021). On remand she settled for $1,725,000 on all claims, including attorney fees. Appellants are among Tudor's five former counsel, who made competing claims for fees out of the settlement amount. The contract fee for all attorney representation was set at one third of the settlement amount, less litigation expenses, which came to $563,823.10. Because the total of the claims of the five attorneys exceeded that amount, Tudor instituted this interpleader action, naming her five former counsel as claimant-defendants, and she sought permission to deposit $563,823.10 into the district court's registry, leaving proper allocation of the funds to the court. Appellants opposed the request and claimed the full value of their fees, naming Tudor and her original attorney as counterclaim defendants, and naming the defendants in *Tudor* as third-party defendants. Appellants argued that $563,823.10 was insufficient to satisfy an estimated $2.1 million in combined fees claimed by all five former counsel, and that Tudor's failure to deposit the estimated $2.1 million was insufficient "to comply with 28 U.S.C. § 1335(a)(1)'s requirement that she pay the full amount of money due into

2

the registry of the court." Aplt. App. at 60, ¶10. They argued that because Tudor failed to deposit sufficient funds, the district court was obliged to dismiss the case for lack of jurisdiction.

Tudor and the defendants from *Tudor* filed separate motions to dismiss Appellants' claims against them. Before ruling on the motions to dismiss, however, the district court ordered the parties to brief whether Tudor's proposed deposit of less than the entire $2.1 million was a jurisdictional defect. Once briefing was complete, the district court issued a jurisdictional ruling that Tudor's proposed deposit of $563,823.10 sufficed to invoke the court's subject-matter jurisdiction. The district court directed her to deposit that amount into the court registry, stating that once she did so, it would take up the motions to dismiss and other pending matters.

That same day, however, Appellants filed a notice of appeal from the district court's jurisdictional ruling. Tudor soon thereafter deposited $563,823.10 into the court's registry, and the district court later stayed the case pending this appeal.

Given the pendency of proceedings in the district court, we directed Appellants to brief our appellate jurisdiction. In response, Appellants contend we have jurisdiction under the collateral-order doctrine. Tudor, however, responds that we must dismiss this appeal because the collateral-order doctrine does not allow us to hear this appeal.

II

We have jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. "A 'final decision' within the meaning of § 1291 is

normally limited to an order that resolves the entire case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 38 (2020). But § 1291 "encompasses not only judgments that terminate an action, but also a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009) (internal quotation marks omitted). An interlocutory order is within that small class only if "(1) the order is conclusive on the question it decides, (2) the order resolves important questions separate from the merits, and (3) the order is effectively unreviewable if not presented in an interlocutory appeal." *Coomer v. Make Your Life Epic LLC*, 98 F.4th 1320, 1323 (10th Cir. 2024) (brackets and internal quotation marks omitted).

These three criteria are "stringent" because "the class of collaterally appealable orders must remain narrow and selective." *Id.* at 1323-24 (internal quotation marks omitted). "[I]mmediate appeals under the collateral-order doctrine are the exception, not the rule." *Id.* at 1324 (internal quotation marks omitted). "Allowing too many piecemeal, prejudgment appeals encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation; threatens those proceedings with delay, adding costs and diminishing coherence; and risks additional and unnecessary appellate court work." *Id.* (brackets, ellipsis, citations, and internal quotation marks omitted).

We need consider only the third criterion. The collateral-order doctrine does not help Appellants because an appeal at this stage of the proceeding is "not necessary to ensure effective review" of the district court's ruling. *Mohawk,*

4

558 U.S. at 108. "The crucial question . . . is whether deferring review until final judgment so imperils the interest [at stake] as to justify the cost of allowing immediate appeal . . . ." *Id.* "Examples of these interests reflecting some particular value of a high order include honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, 142 F.4th 1262, 1266 n.2 (10th Cir. 2025) (internal quotation marks omitted). Litigation between private parties almost always falls short of this standard. *See id.* (noting "the Supreme Court has repeatedly declined to extend collateral order treatment to orders stemming from litigation between private parties").

Appellants identify no substantial public interest or particular value of a high order that warrants extending the collateral-order doctrine to their appeal. This is a purely private dispute over attorney fees. We have little difficulty concluding that Appellants have failed to show that the collateral-order doctrine affords us jurisdiction to review their appeal.

III

This appeal is dismissed for lack of jurisdiction.

Entered for the Court

Harris L Hartz
Circuit Judge

5